UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDWARD GETHIN                                               PLAINTIFF

v.                                         CIVIL ACTION NO. 3:14-CV-53-DW

CAROLYN W. COLVIN, Acting Commissioner of Social Security          DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff Edward Gethin has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain

judicial review of a final decision of the Commissioner of Social Security that denied his

applications for disability insurance benefits (DIB) and supplemental security income (SSI).

Gethin applied for DIB and SSI on June 24, 2010, alleging that he was disabled as of Dec. 3,

2008, due to leukemia treatment, learning disabilities, kidney damage, high blood pressure, three

coronary artery stents, and osteoporosis of the left hip (Tr. 187-92, 205). The Commissioner

denied Gethin's claims on initial consideration (Tr. 82-83, 84-98, 99-113) and on reconsideration

(Tr. 115-116, 117-131, 132-149). Gethin requested a hearing before an Administrative Law

Judge (ALJ) (Tr. 165-168).

ALJ George A. Jacobs conducted a hearing in Louisville, Kentucky, on July 26, 2012

(Tr. 34-63). Gethin attended with his attorney, Scott Miller (Tr. 34). Gethin and vocational

expert (VE) Robert Piper testified at the hearing (Tr. 38-59, 60-63). Following the conclusion of

the hearing, ALJ Jacobs entered a hearing decision on Aug. 17, 2012, that found Gethin is not

disabled for the purposes of the Social Security Act (Tr. 15-28).

In his adverse decision, ALJ Jacobs made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act
      through Dec. 31, 2013.

2. The claimant has not engaged in substantial gainful activity since Dec. 3, 2008, the alleged onset date (20 C.F.R. 404.1571, *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, chronic kidney disease, degenerative joint disease of the right knee, status post-open reduction and internal fixation of left supracondylar humerus fracture, depression and borderline intellectual functioning (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.R.F. 404.1567(a) and 416.967(a) except that he must have the option to sit or stand periodically throughout the workday, with at least 30 minutes in a position; he cannot kneel, crawl, or climb ladders, ropes or scaffolds, but he can occasionally perform other postural activities; he cannot do any overhead reaching; he cannot do any pushing or pulling with his lower extremities; and he can perform frequent but not constant grasping and fine finger manipulation with his dominant left hand. He should avoid fumes, odors, dust, gases, poor ventilation, temperature extremes, humidity and hazards such as machinery and heights. He can perform only simple, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on Dec. 29, 1969, and was 38-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from Dec. 3, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 17-27). Gethin sought review of the hearing decision by the Appeals Council (Tr. 7-11). The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ Jacobs' decision (Tr. 1-6). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a

finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See, Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3) The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).

Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th

Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

Gethin disputes findings of fact no. 3, 4, 5, 9, 10 and 11 in his fact and law summary (DN 16, pp. 4-13). He claims that finding no. 3, which identifies his severe impairments, is not supported by substantial evidence because he does not have "borderline intellectual functioning," but rather mild mental retardation as determined by consultative examiner Daniel H. Miller, Ph.D. (Tr. 657).

Gethin argues with respect to finding no. 4, in which ALJ Jacobs found that Gethin's impairments does not meet or equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appx. 1, that substantial evidence confirms that he is disabled under listing 12.05C, the listing for mental retardation. Gethin explains that his full-scale IQ score of 63, along with his adaptive functioning deficits and significant work-related limitations of function, when taken together, satisfy both the "diagnostic description of mental retardation contained in the introductory paragraph of the listing, and the requirement for other significant work-related limitation of function found in 12.05C (DN 16, pp. 5-10).

Gethin points out that Dr. Miller during his consultative psychological evaluation of Gethin in August of 2010, administered the WAIS-IV test, which revealed a full-scale IQ score of 63, a well-below average score that placed Gethin in the lowest 1 percentile (Tr. 654-55). Gethin contends that as a result of this IQ score he falls within the range of mild mental retardation as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV, p.

317, Fourth Edition, 1994). To reinforce this point, Gethin notes that additional testing performed by Dr. Miller placed him at a grade 5.2 reading level and a grade 4.0 math level, scores that even the vocational expert acknowledged would eliminate some of the sedentary alternative jobs identified during the hearing (Tr. 62).

Further, Gethin maintains that the record reveals that he has clear deficits in adaptive functioning that arose during his developmental years prior to age 22, notwithstanding his graduation from high school after taking only special education classes. Gethin acknowledges that he did obtain a high school diploma with a 3.0 grade point average, but insists that this accomplishment does not refute his intellectual deficits (DN 16, p. 7). The mere fact, according to Gethin, that he was able to successfully complete high school, while taking only special education classes, does not rule out his mild mental retardation.

As support for this view, Gethin cites *Dragon v. Comm'r*, Case No. 09-4489, 2012 WL 987758 (6th Cir. Mar. 26, 2012), which Gethin explains holds that graduation from high school in a special education program does not negate a finding of disability under listing 12.05C where the claimant's IQ scores otherwise meet the requirements of the listing and the claimant's limitations in adaptive functioning were consistent with her low IQ scores (DN 16, p. 7). Gethin adds that the adult function report completed by his mother-in-law, Bonnie Harrison (Tr. 233-241), also confirms his adaptive limitations. Harrison indicated that Gethin has problems with adapting to changes in routine and cannot pay attention for extended periods of time (Tr. 238). Gethin adds that his mere ability to watch TV and to talk on the phone are not inconsistent with a finding of mild mental retardation as the *Dragon* decision holds.

Gethin continues in his argument involving listing 12.05C to maintain that his intellectual deficits manifested prior to his 22nd birthday. On this point, Gethin reiterates that he was placed

in special education classes throughout high school. The test results obtained by Dr. Miller (Tr. 654-55), according to Gethin, reinforce these intellectual deficits given Dr. Miller's observation that Gethin was "slow to grasp, process, retain and apply abstract concepts." (Tr. 654). Gethin notes that both his reading and math skills were found to be at the 4th/5th grade level so that all of these factors combined indicate that his intellectual deficits manifested themselves prior to age 22 as required by the diagnostic description of listing 12.05.

Gethin argues in the final portion of his argument challenging finding no. 4 that the record clearly shows that he has "a physical or other mental impairment imposing an additional and significant work-related limitation of function" under listing 12.05C. As proof of his severe impairments Gethin points to ALJ Jacobs' finding of fact no. 3, which identifies coronary artery disease, chronic kidney disease, degenerative joint disease of the right knee, depression and status post-open reduction and internal fixation of the left supracondylar humerus fracture (Tr. 17-18). Many of these severe impairments Gethin notes are the result of his aggressive chemotherapy treatment for leukemia, which while successful in putting his blood cancer into ongoing remission, resulted in Gethin suffering from chronic diarrhea, coronary artery disease and chronic kidney disease (Tr. 43, 55, 300-352, 347, 415 427, 541), Gethin now must take various medications for high cholesterol (Lipitor and TriCor), high blood pressure (Plavix, Cozaar and Toprol) and depression (Zoloft) (DN 16, p. 10).

Gethin also points out that his medical records confirm a surgical reduction and fixation of his left knee to repair a fracture of the humerus that now causes him to experience pain and swelling in the right knee so that he is only able to walk for several blocks and sit for approximately 25 minutes before experiencing significant knee pain (Tr. 44-45, 53-54).

8

Gethin adds that he has been hospitalized six times in his life for depression (Tr. 47) and that his emotional problems make it difficult for him to maintain focus, concentrate or have uninterrupted sleep (Tr. 46, 49). Accordingly, these severe impairments, both physical and mental, all noted by Dr. Miller, who diagnosed Gethin with mild mental retardation, result in a "guarded" prognosis and "adversely affect [Gethin's] ability to fully access activities of daily living." (Tr. 657). Consequently, Gethin concludes in his fact and law summary that he has satisfied all of the criteria of listing 12.05C to be found disabled at step 3 of the sequential evaluation process. ALJ Jacobs' contrary decision consequently is not supported by substantial evidence according to Gethin.

Gethin next argues in his fact and law summary that finding of fact no. 5 of ALJ Jacobs' hearing decision is not supported by substantial evidence. Gethin reasons that because ALJ Jacobs determined in this finding of fact that Gethin is capable only of performing a limited range of sedentary work, then Gethin must be considered to be impaired under listing 12.05C as a matter of law. He cites as support for this conclusion *Mowery v. Heckler*, 771 F.2d 966 973 (6th Cir. 1985) in which the Sixth Circuit held, according to Gethin, that the criteria of listing 12.05C were satisfied when the plaintiff in *Mowery* had an IQ that fell within the prescribed range along with physical impairments that limited the plaintiff to no more than light work activity. Here, Gethin points out that he is not even capable of performing light work so that his physical and mental impairments must as a matter of law be considered to impose "additional and significant work-related limitation of function" under listing 12.05C (DN 16, p. 11).

Gethin concludes his fact and law summary with a general challenge to findings of fact no. 9, 10 and 11. Essentially, he argues that none of these three findings are supported by substantial evidence because he has demonstrated that he is disabled from performing his past

relevant work as a parking lot attendant or auto parts deliveryman and the ALJ failed to establish that he has any transferable skills.  As for findings of fact 10 and 11, Gethin argues merely that the ALJ should never have reached step 5 of the sequential evaluation process since Gethin successfully established his disability at step 3.

**Legal Analysis.**

*Finding of Fact No. 3.*

We begin our discussion with consideration of Gethin's argument that ALJ Jacobs erred when he included borderline intellectual functioning as a severe impairment rather than finding Gethin to have a severe impairment of "mild mental retardation."  As noted, Gethin relies upon the consultative psychological report of Dr. Daniel A. Miller performed on Aug. 31, 2010 (Tr. 651-658) to support his argument.  In particular Gethin cites Dr. Miller's diagnostic impression on Axis II whereat Dr. Miller found Gethin to have mild mental retardation along with a current GAF score of 45-50 (Tr. 657).  Based on Gethin's complex health history, which includes successful treatment for leukemia with resulting kidney damage, high blood pressure and post-status 3 coronary artery stents, Dr. Miller concluded that such "health limitations coupled with a severe learning disorder … would adversely affect [Gethin's] ability to fully access activities of daily living."  (Id.).

In other words, Gethin appears to argue that the ALJ was required by the above consultative psychological examination results to find that Gethin suffers from a severe impairment of mild mental retardation, rather than borderline intellectual functioning.

This distinction, however, is simply not material in the terms of the outcome of Gethin's claims for DIB and SSI. The finding of borderline intellectual functioning by ALJ Jacobs did not foreclose the possibility that Gethin would be determined to be disabled at step 3 of the sequential evaluation process under the listing for mental retardation, listing 12.05.[1]

A determination of severity of an impairment at step 2 of the sequential evaluation process, as the Commissioner correctly notes in her fact and law summary, is merely a preliminary inquiry that is used initially to identify whether an impairment significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Her v. Comm'r*, 203 F.3d 388, 391 (6th Cir. 1999). When the ALJ determines that a claimant has a severe impairment or impairments and proceeds beyond step 2 to continue in the sequential evaluation process to evaluate the effects of all of a claimant's impairments, both severe and nonsevere, the alleged failure of the ALJ to identify any particular one of the claimant's severe impairments at step 2 will be held to be harmless error. *See, Kutscher v. Commissioner,* case no. 1:13-cv-1389, 2014 WL 3895220 at *11 (N.D. Ohio Aug. 8, 2014)(citing *Miziarz v. Sec'y HHS*, 837 F.2d 240, 244 (6th Cir. 1987));*Anthony v. Astrue*, 266 Fed. App'x 451, 457(6th Cir. 2008). Because ALJ Jacobs continued in his hearing decision to evaluation all of Gethin's impairments, severe or otherwise, the failure to include mild mental retardation among the listed severe impairments set forth in finding of fact no. 3 would be harmless error at worst given the ALJ's consideration of all of Gethin's impairments throughout the remaining steps of the sequential evaluation process.

---

[1] The term "mental retardation" as it relates to listing 12.05 was replaced in August of 2013, with the term "intellectual disability." *See, Robinson v. Comm'r*, Case No. 2:13-CV-530, 2014 WL 3419309 at *6 n. 2 (S.D. Ohio July 10, 2014). Because both parties continue to use the term "mental retardation" as it relates to the listing at issue, the Court will also do so in order to avoid any unnecessary confusion.

More fundamentally, the determination of ALJ Jacobs in finding no. 3 that Gethin has "borderline intellectual functioning" as opposed to mild mental retardation, did not eliminate the possibility that Gethin would be found to be disabled under listing 12.05 for mental retardation. A medical diagnosis of BIF is not inconsistent much less determinative of disability under listing 12.05C. *See, Robinson*, 2014 WL 3419309 at *7 ("Plaintiff correctly notes that a diagnosis of BIF [borderline intellectual functioning] does not rule out the possibility of a finding of mental retardation under listing 12.05(C) (citing *Sheeks v. Comm'r*,. 544 Fed. Appx. 639, 641-42 (6th Cir. 2013) ("The [claimant] notes that the ALJ's finding that he has borderline intellectual functioning, a lesser diagnosis than mental retardation, does not rule out the possibility of a finding of mental retardation. That is true, as the Commissioner concedes."); *Pembleton v. Comm'r*, Case No. 1:10-CV-650 2011 WL 7070519 at *9 (S.D. Ohio Dec. 23, 2011) ("As an initial matter, the court notes that whether plaintiff was diagnosed with mental retardation is not dispositive of whether he meets listing 12.05C.") (citing *Breitenstein v. Astrue*, Case No. 3:10-CV-32, 2011 WL 1235018 at *12 (S.D. Ohio Jan. 6, 2011) ("Instead of requiring evidence of a diagnosis of mental retardation, the correct analysis focuses on whether the evidence of record meets or equals listing 12.05's introductory paragraph and listing 12.05C's criteria.")). *See also, Wilderson v. Comm'r*, Case No. 3:08-CV-419, 2010 WL 817307 at *13 (S.D. Ohio Mar. 5, 2010) ("Requiring such a diagnosis in cases of mental retardation would place formalism over substantive evidence."). Accordingly, the failure of ALJ Jacobs to find mild mental retardation as a severe impairment at step 2 certainly did not preclude a finding that Gethin's mental impairment met or medically equaled the severity of listing 12.05C, which is the central thrust of Gethin's fact and law summary. We therefore turn our focus to this determinative issue.

*Finding of Fact No. 4.*

The critical question raised by Gethin, indeed the primary focus of his fact and law summary, is the question of whether ALJ Jacobs' finding of fact no. 4 is supported by substantial evidence to the extent that the ALJ found at pp. 5-7 of his hearing decision (Tr. 19-21) that Gethin does not meet or equal the criteria of listing 12.05C at step 3 of the sequential evaluation process. At this step, a claimant will be considered to be disabled if his impairment meets or equals one of the listings of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *McClellan v. Astrue*, 804 F. Supp.2 d 678 (E.D. Tenn. 2011). The burden falls on the claimant to prove every element of the applicable listing. *King v. Sec'y of H&HS*, 742 F.2d 968, 974 (6th Cir. 1986).

When the claimant presents evidence of an impairment that meets or equals all of the requirements for a particular listed impairment, along with the 12-month duration requirement, a finding of disability is required without regard to the claimant's age, education or work history. *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also, Sullivan v. Zebley*, 493 U.S. 521, 531-33 (1990) ("The Secretary [now Commissioner] explicitly has set the medical criteria defining the listing impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'") (citing 20 C.F.R. §416.925(a)(1989)); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986) ("If a claimant's condition meets or equals the listed

impairments, he is conclusively presumed to be disabled and entitled to benefits; if not, the process moves to the fourth step").

An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings demonstrated by the medical evidence are equivalent in severity and duration to that of a listed impairment. *See Land v. Sec'y of H&HS,* 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. §1526(b)). A decision of medical equivalency, however, must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques. *Id.* Finally, an ALJ is not required by Sixth Circuit case law to individually discuss each element of the record when considering the listings so long as the ALJ demonstrates that he has considered the totality of the record. *Rosic v. Comm'r of Soc. Security*, 2010 WL 3292964 at *3 (N.D. Ohio Aug. 19, 2010) (citing *Gooch v. Sec'y of H&HS*, 833 F.2d 589, 591 (6th Cir. 1987)).

For Gethin to meet his burden at step 3 to satisfy the criteria of listing 12.05C he must meet four requirements. See 20 C.F.R. Part 404, Subpart P, Appx. 1, §12.05(C); *Sheeks*, 544 Fed. Appx. at 641. First, Gethin must show a significantly subaverage general intellectual functioning under the diagnostic description requirements of the introductory paragraph to listing 12.05. Second, he must establish that he experienced "deficits in adaptive functioning." *Id.* Third, he must show that such deficits began before he reached the age of 22 during his developmental period. *Robinson*, 2014 WL 3419309 at *6-7. Fourth and finally, under subsection (C) of the same listing he must show a valid IQ score of 60-70 along with a physical or other impairment that imposes additional and significant work-related limitation of function. *Id. See also, West v. Comm'r*, 240 Fed. Appx. 692, 697-98 (6th Cir. 2007) (To satisfy the diagnostic description a claimant must demonstrate a subaverage intellectual functioning, onset

14

before age 22, and adaptive skills limitations). *See also, Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (discussing the requirement that a claimant satisfy the diagnostic description in the introductory paragraph of listing 12.05 along with any one of the four sets of criteria that follow).

Here, no question exists that under subsection (C) of listing 12.05 Gethin exhibited a full-scale IQ score of 63 easily within the required range for this particular subsection of the listing. Likewise, Gethin's medical history, along with the findings of ALJ Jacobs, reveal the presence of other physical impairments that impose additional and significant work-related limitation of function as noted by the severe impairments set forth in finding of fact no. 3, which include coronary artery disease, chronic kidney disease, degenerative joint disease, depression and internal fixation of the left supracondylar humerus fracture (Tr. 17).

These severe physical impairments themselves resulted in various physical limitations included within the residual functional capacity (RFC) finding contained in finding of fact no. 5. ALJ Jacobs specifically limited Gethin to sedentary work with a sit or stand option, no overhead reaching or any pushing or pulling with the lower extremities, for example (Tr. 21). Thus, the requirements of subsection (C) of listing 12.05 were not per se the stumbling block for Gethin in terms of ALJ Jacobs' adverse finding at step three of the sequential evaluation process.

The crux of the problem from the ALJ's perspective is explained beginning at the bottom of p. 6 of his hearing decision and continues onto page 7 (Tr. 20-21). In essence, ALJ Jacobs concluded that Gethin failed to show the necessary deficits in adaptive functioning as required by the diagnostic description contained in the introductory paragraph of listing 12.05. To quote the view of ALJ Jacobs on this issue:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have the requisite deficits in adaptive functioning required by the listing. Mental retardation is defined in the listings as

15

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. In order to meet the criteria of Medical Listing 12.05C, the claimant would have to satisfy this definition and prove the existence of a valid verbal, performance or full-scale IQ of 60-70 and another impairment imposing an additional and significant work-related limitation of function. Although the claimant does have a full-scale IQ score of 63 (Ex. B17F), this score is not considered to be a valid indicator of the claimant's actual level of cognitive functioning because the record does not establish deficits in adaptive functioning consistent with mental retardation. This claimant reports that he was enrolled in special education, but his school records reflect that he performed well and was able to obtain a regular high school diploma with a 3.00 grade point average (Ex. B6E). He has never required placement in a group home or other institutionalized setting. He has proven capable of completing self-care tasks and household chores, managing money, and performing other typical activities of daily living (Ex. B5E). He was able to obtain a driver's license. His testimony indicates that he able to do crossword puzzles and read novels, magazines and the Bible. He understands the story lines when he watches television programs. He struggles with mathematics but can perform at least simple arithmetic sufficient to count change, pay bills and manage a checking account (Ex. B5E). The claimant's work history demonstrates sufficient intellectual functioning to perform unskilled and even semi-skilled work and he maintained steady employment for a decade after recovering from leukemia (Ex. B4E). Overall, the claimant appears to have functioned quite well throughout his life despite his intellectual limitations.

(Tr. 20-21).

The above-quoted language sits at the center of the parties' dispute over finding of fact no. 4. Essentially, we must determine whether substantial evidence supports the determination of the ALJ that Gethin did not exhibit "deficits in adaptive functioning" prior to age 22 as required by the language of the diagnostic description in the introductory paragraph of listing 12.05. Nowhere in the paragraph is it specified how severe such limitations must be to qualify. *See, Robinson*, 2014 WL 3419309 at *8 ("The plain language of listing 12.05 does not identify how severe limitations must be to qualify as 'deficits in adaptive functioning.'") (citing

*Pembleton v. Comm'r*, Case No. 1:10-CV-650, 2011 WL 7070519 at *11 (S.D. Ohio Dec. 23, 2011)).

While the language of the listing itself does not resolve this question, it has been held that "case law from the Sixth Circuit and other federal courts" suggest that a claimant must have relatively significant deficits to satisfy the listing." *Robinson*, 2014 WL 3419309 at *8 (citing *West*, 240 Fed. Appx. at 698-99 (suggesting that a claimant's ability to understand and retain simple instructions; maintain concentration and attention for basic tasks; interact effectively with co-workers, and deal with work stress all supporting a finding of no deficient in adaptive functioning)). *See also, Harris v. Comm'r*, 330 Fed. Appx. 813, 815-16 (11th Cir. 2009) ("Claimant who did well in special education classes; was able to perform several jobs; and who had mild limitations in daily living activities, social functioning, and concentration did not have the type of deficits in adapative functioning required for listing 12.05(C).

Gethin in his fact and law summary takes substantial issue with ALJ Jacobs' reliance upon Gethin's graduation from high school, his attainment of a regular high school diploma and graduation with a 3.0 grade point average as somehow negating the remaining evidence of severe mental impairments determined by Dr. Miller, which place Gethin in the bottom one percentile in his intellectual functioning. In particular, Gethin cites the facts and holding of *Dragon v. Comm'r*, 470 Fed. Appx. 454 (6th Cir. 2012) for the proposition that mere graduation from high school in the special education program of itself does not automatically negate the possibility that a claimant will satisfy the criteria for a finding of disability at step 3 under listing 12.05C.

Examination of the *Dragon* decision, as the Commissioner points out, however, reveals facts that stand in stark contrast to those that involve the Plaintiff in the present case. In *Dragon*, the claimant at age 12 possessed a full-scale IQ of 66, was noted to have "mild articulation

delay" and was placed on an individual education plan in special education classes as a result. *Dragon*, 470 Fed. Appx. at 456. The claimant in *Dragon*, unlike Gethin, was not able to pass any of her 9th grade proficiency tests even with these accomodations. In contrast, Gethin did pass his high school proficiency tests to graduate with a regular diploma. *Id*. Compare these circumstances with *Dragon*, which explains that, "Dragon never passed any of the 9th grade proficiency tests and was exempted because she '[did] not have the necessary skills to pass.'" *Id*. Instead, she completed high school in summer courses that provided for work-study credits. *Id*. Her school records indicated, contrary to Gethin's own situation, that she was only developing skills sufficient to live independently "with some assistance." *Id*.

Also unlike Gethin, the claimant in *Dragon* was unable to successfully maintain employment of any significant duration despite her repeated efforts to do so. *Dragon*, 470 Fed. Appx. at 458. As the Sixth Circuit explained:

> Dragon has proved that she is not unemployed for lack of trying. Prior to applying for SSI, Dragon has attempted many jobs for short time periods but has been unable to maintain consistent employment. Dragon testified that she had difficulty keeping up, that she was made fun of, that she was slower than the others, and that she would get discouraged and frustrated at her various jobs.

Dragon, 470 Fed. Appx. at 464.

Such circumstances stand in direct contrast to Gethin's own employment history, which includes semi-skilled employment as a car lot attendant at an auto dealership for 4.5 years and 5 years of employment as an auto parts delivery driver (Tr. 225). Gethin in effect maintained steady employment for approximately a decade after he fully recovered from leukemia (Id.). His work records and testimony reveal no failed work attempts or any inability to "keep up" in either of the jobs he held following his successful cancer treatment.

Additionally, Gethin obtained many milestones of independent, self-sufficient living. He acknowledged that he is able to manage his own money, pay his bills and maintain a checking account (Tr. 50, 219, 237). He obtained a driver's license and indeed drove regularly as part of his employment as an auto parts delivery person (Tr. 39). Gethin lives independently with his wife and her family, is able to attend to his own personal care needs, perform household chores, read crossword puzzles, books and the Bible (Tr. 47-49, 51-52).

All of the above circumstances taken together constitute substantial evidence to support the finding of the ALJ at step 3 of the evaluation process that Gethin failed to satisfy the diagnostic description of mental retardation found in the introductory paragraph of listing 12.05. The *Dragon* decision, if anything, merely reinforces the point by its stark contrast to the facts of the present case. We certainly are not the first court to make such a distinction as far as *Dragon* is concerned. *See, Holt v. Colvin*, Case No. 213-365 (WOB-CJS), 2014 WL 2525856 at *6 (E.D. Ky. June 4, 2014) (distinguishing *Dragon* based on the failure of the claimant to submit evidence he suffered from deficits in adaptive functioning prior to age 22); *Partin v. Colvin*, Case No. 12-74-GFVT, 2013 WL 5468498 at *4-6 (E.D. Ky. Sept. 30, 2013)(distinguishing *Dragon* where the claimant in *Partin* had average high school scores, successfully held jobs in the past and the mere IQ score placing the claimant in the mildly mentally retarded range did not, standing alone, satisfy the diagnostic criteria of listing 12.05C)). *See also, Cooper v. Comm'r*, 217 Fed. Appx. 450, 452 (6th Cir. 2007) (claimant failed to satisfy the diagnostic description of listing 12.05C where he engaged in activities inconsistent with mental retardation that included semi-skilled employment, operating motorcycle and playing the guitar).

Here, Gethin focuses on certain limited types of activities such as his ability to watch TV and to use the phone to argue that they are not inconsistent with a finding of mild mental

retardation.  The Court does not disagree with this observation or the authority that Gethin cites

for it.  These two limited examples of activities of daily living, however, are far from the total

picture of Gethin's adaptive functioning.  Gethin not only successfully completed high school, it

appears that he graduated with a regular high school diploma, ranked 110th in a class of 443

students with a grade point average of 3.0 (Tr. 242).  He then proceeded to successfully maintain

employment for approximately a decade following his successful treatment for leukemia.  These

circumstances, and those described more fully above, are strongly supportive of ALJ Jacobs'

determination in finding of fact no. 4 that Gethin's mental limitations are not sufficiently severe

to satisfy the criteria of listing 12.05C.  We therefore cannot hold that this finding is unsupported

by substantial evidence.  To the contrary, it is well supported.


*Finding of Fact No. 5.*

Gethin also briefly addresses the adequacy of finding of fact no. 5 of ALJ Jacob's hearing

decision (DN 16, p. 11).  This finding contains the residual functional capacity (RFC)

determination. ALJ Jacobs found in this finding that Gethin remains capable, despite his severe

and nonsevere impairments, of performing a reduced range of sedentary work with certain

exertional and nonexertional limitations (Tr. 21-26).  Gethin basically contends in his fact and

law summary that because he established his disability under listing 12.05C as a matter of law,

the ALJ erred in continuing to step 4 of the sequential evaluation process.  Gethin makes no

other argument concerning finding no. 5.

In other words, if Gethin's argument regarding listing 12.05C is not accepted by the

Court, then by necessity his challenge to finding of fact no. 5 also must fail as it rests entirely on

this point.  Gethin simply sets forth no other arguments to support his position that the RFC

finding is not supported by substantial evidence. We are not required to hypothesize such arguments or create hypothetical "straw men" simply to determine whether they could withstand review by the Court. Because the Court rejected Gethin's arguments that his nonexertional impairments were sufficiently severe to satisfy the criteria of listing 12.05C, the Court likewise must reject his briefly-stated argument concerning finding of fact no. 5. *See, McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones."). *See also, Hollon ex rel. Hollon v. Comm'r*, 447 F.3d 477, 490-91 (6th Cir. 2006) (same).

*Finding of Fact No. 9.*

The next finding that Gethin challenges is finding of fact no. 9. This finding contains the determination by ALJ Jacobs that transferability of job skills is not material to the determination of disability where the medical-vocational rules used as a framework for decision making support a finding that Gethin is not disabled, irrespective of whether he has transferrable job skills. Gethin argues here only that he "definitively demonstrated that he is disabled from substantial, gainful employment" and that "[h]e cannot perform past relevant work and he has no skills that are transferrable to her employment." (DN 16, p. 12).

As the Commissioner points out, ALJ Jacobs found in finding of fact no. 5 that Gethin has the RFC to perform a limited range of sedentary work (Tr.21). Given Gethin's nonexertional limitations, ALJ Jacobs referred to the medical-vocational guidelines of 20 C.F.R Part 404, Subpart P, Appx. 2, as a framework for decision making at step 5 of the sequential evaluation

process.  Because the guidelines directed a finding of not disabled for an individual with Gethin's vocational profile, either with or without transferrable skills, ALJ Jacobs did not need to determine whether Gethin had such transferrable skills.   The medical vocational guidelines, used as a framework in conjunction with the other testimony of vocational expert Piper conclusively demonstrated that Gethin remains capable of performing a limited range of sedentary activity in alternative jobs such as those identified during the hearing (Tr. 60-63).  *See, Arrington v. Social Sec. Admin*., 358 Fed.Appx. 89, 95 (11th Cir. Dec 22, 2009)(transferability of job skills irrelevant where the ALJ relied on the medical-vocational guidelines along with the testimony of the vocational expert to determine claimant to be not disabled at step 5).

Because the vocational expert in response to ALJ Jacobs' hypothetical question testified that an individual with such a vocational profile and limitations could perform unskilled sedentary alternative work such as office clerk, information clerk and assembler, the Commissioner carried her burden at step 5 of the sequential evaluation process so that finding of fact no. 10, in addition to the prior finding, is supported by substantial evidence.  *See, Howard v. Comm'r*, 276 F.3d 235, 239 (6th Cir. 2002) (citing *Varley v. Sec'y of HHS*, 820F.2d 777, 779 (6th Cir. 1987)).  The hearing decision of AJL Jacobs correctly applies the controlling law, and is fully supported by substantial evidence throughout.  The Court shall enter a final judgment that affirms the decision of the Commissioner and dismisses the complaint with prejudice.

Cc:      Counsel of Record